**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Johnson Drywall, Inc., et al., | CIV. 13-8124-PCT-PGR |
| Plaintiff, | |
| v. | **ORDER** |
| The Phoenix Insurance Company, | |
| Defendant. | |

Before the Court is Plaintiffs' motion to compel. (Doc. 39.) Plaintiffs seek disclosure of reserve information which Travelers has redacted or withheld as confidential. (Doc. 39.) Defendant filed a response in opposition. (Doc. 40.) The court conducted an *in camera* review of the withheld and non-redacted documents. For the reasons set forth herein, the motion to compel is granted.

## BACKGROUND

As alleged in Plaintiffs' first amended complaint (Doc. 18), Prescott Resort Hotel, L.L.C. ("Prescott Resort"), owned and operated a Wyndham Garden Hotel in Prescott, Arizona. (*Id.*, ¶ 12.) Prescott Resort had a commercial insurance policy with Defendant ("Travelers") providing coverage for the hotel. (*Id.*, ¶ 14.)

On February 2, 2011, a water line broke, causing extensive damage to the hotel. (Id., ¶ 20.) Prescott Resort made claims under its i policy with Travelers for property damage, business personal property, and loss of business income. (*Id.*, ¶ 21.)

Plaintiffs allege that Travelers refused to make repair payments it owed to Plaintiff

Paul Johnson Drywall, who performed repair work on the hotel, and refused to make business personal property and business income loss payments it owed to Prescott Resort. (*Id.*, ¶ 40.)

Prescott Resort ultimately filed for bankruptcy. It assigned its claims against Travelers to Plaintiffs as part of the bankruptcy proceedings. (*Id.*, ¶ 1.)

On May 15, 2013, Plaintiffs filed a complaint alleging breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment. (Doc. 1.) They filed an amended complaint on August 19, 2013. (Doc. 18.)

## DISCUSSION

Plaintiffs seek an order compelling Travelers to produce its reserve information. (Doc. 39.) Travelers contends that the information is irrelevant and not discoverable under applicable law. (Doc. 40.)

**I.  Legal Standard**

The scope of discovery is governed by Rule 26 of the Federal Rule of Civil Procedure, which allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case. *See id.*; *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). District courts have broad discretion in determining relevance for discovery purposes. *Hallet v. Morgan,* 296 F.3d 732, 751 (9th Cir. 2002).

Rule 37(a) authorizes a party to apply for an order to compel disclosure or discovery. "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(2)(A). The party resisting discovery has a "heavy burden" of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

- 2 -

## II. Analysis

The term "reserve" refers to "a fund of money set aside by a bank or an insurance company to cover future liabilities." *Metropolitan Life Ins. Co. v. Ogandzhanova*, No. 12-CV-372-PHX-GMS, 2013 WL 1442581, at *1 (D.Ariz. April 9, 2013) (quoting *Black's Law Dictionary* (9th ed. 2009)). Plaintiffs assert that information about Travelers' reserves on their claims is relevant to their allegation of bad faith. An insurer acts in bad faith when it unreasonably investigates, evaluates, or processes a claim, and either knows it is acting unreasonably or acts with such reckless disregard that such knowledge may be imputed to it. *Zilisch v. State Farm Mut. Auto. Ins. Co.,* 196 Ariz. 234, 238, 22, 995 P.2d 276, 280 (2000). "[B]ad-faith actions against an insurer. . . can only be proved by showing exactly how the company processed the claim, how thoroughly it was considered and why the company took the action it did." *Ogandzhanova*, 2013 WL 1442581, at *1 (quoting *Brown v. Super. Ct.*, 137 Ariz. 327, 336, 670 P .2d 725, 734 (1983)).

In support of their arguments that the reserve information is discoverable, Plaintiff's rely on the analysis in *Ogandzhanova*. After surveying the relevant case law, the court in *Ogandzhanova* reasoned as follows:

> Central to the relevance (or lack thereof) of reserve information in a given case is the method of calculation. If the insurers can show their calculations do not include analysis of the factual or legal merits of the insured's specific claim, but instead rely on automatic factors, then the relevance of reserve information diminishes significantly. On the other hand, courts have granted motions to compel production of reserve information when the insurers have failed to produce evidence that the reserve arithmetic does not include analysis of the claim's merit.

2013 WL 1442581, at *1. The court concluded, therefore, that "when calculation of the reserve amount entails an evaluation . . . based upon a thorough factual . . . consideration, the information will be relevant, and vice versa." *Id.* (citations and internal quotations omitted).

Plaintiffs contend that "[t]here is no question that Travelers calculated the reserve information at issue based upon a factual consideration of Prescott Resort Hotel's specific claims." (Doc. 39 at 5.) Moreover, according to Plaintiffs, "the reserve information is

especially relevant and discoverable in this case because it sheds light on why Travelers handled the claims the way it did and the otherwise inexplicable positions Travelers took on what it was willing to pay on those claims." (*Id.* at 6.) Plaintiffs argue that the discovery produced by Travelers shows that its "adjusters reviewed the level of reserves at every stage of the claim, repeatedly concluded that the reserves were too low, and had to repeatedly ask for increases in the reserves," and that "Travelers' adjusters were apologetic for having to increase the reserves and were hesitant to do so." (Doc. 42 at 3–4.)

The Court agrees that information is relevant and discoverable under the reasoning in *Ogandzhanova*. In that case, the insurer, as the party resisting discovery, met its burden of showing that it "does not analyze the factual and legal merit of a claim when it sets and adjusts the reserve amount." 2013 WL 1442581, at *2. Its Vice President and Actuary "stated that the reserve calculation is a factor of assumed average claim termination rates determined by MetLife actuaries from multi-year studies and limited claim profile information, such as the date of disability, monthly benefit amount, policy terms, and the age of the claimant." 2013 WL 1442581, at *2. He explained, accordingly, that the reserves "do not take into account any facts specific to the claim." *Id.*

Unlike the insurer in that case, Travelers has "failed to produce evidence that the reserve arithmetic does not include analysis of the claim's merit." *Id.* The record shows that the reserve was adjusted based on Traveler's assessment of the merits of Plaintiffs' claims, in contrast to the automatic factors used by the insurer in *Ogandzhanova*. (*See* Doc. 39, Ex's C–H.)

The Court is also persuaded by the analysis in *Bernstein v. The Travelers Insurance Company*, 447 F.Supp.2d 1100 (N.D.Cal. 2006). In *Bernstein*, the plaintiff claimed that the defendant intentionally and unjustifiably delayed making payments to which it knew plaintiff was entitled and made unjustifiable demands for proof of loss. *Id.* at 1108. The court found the reserve information relevant to proving the insurer's bad faith by showing its "internal assessments" about coverage and valuation of the insured's claims and how they differed

from what was communicated to the plaintiffs. *Id.* The court explained that the manner in which the insurer sets reserves shows "what [the insurer] actually knew and thought, and what motives animated its conduct," which are "critical areas of inquiry in bad faith cases" and "fully fair game for discovery." *Id.* at 1107.

Similarly, in *U.S. Fire Insurance Co. v. Bunge North America, Inc.*, 244 F.R.D. 638, 645 (D.Kan. 2007), the court found that "the actual amounts of the Insurers' loss reserves—including any changes to those amounts—could, at the least, lead to admissible evidence relating to the Insurers' own beliefs about coverage and their liability, as well as their good or bad faith in handling and investigating [the insured's] claims." *See Flintkote Co. v. General Acc. Assur. Co. of Canada*, No. C-04-1827-MHP, 2009 WL 1457974, at *4–5 (N.D.Cal. May 26, 2009) (explaining that "the reserves may indicate an estimate of the amount that defendant believed or knew it would have to pay for plaintiff's . . . claims" and "may assist plaintiff in evaluating its bad faith claim and preparing it for trial.").

Travelers counters that reserve information is "not discoverable because reserves are required by statute and are uncertain estimations of liability" and that the reserves set in this case "were mere estimates of Travelers' financial liability for the claim based solely upon the limited financial information available at any given time." (Doc. 40 at 3, 4.) These arguments, however, "relate to the weight of the evidence and not its relevancy for purposes of discovery." *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 331 (N.D.W.Va. 2006) (finding reserve information relevant to bad faith claims because "the loss reserves compiled by Bituminous concerning the plaintiffs' individual claims would clearly be affected by the insurer's estimation of its insureds' potential liability, and by its belief about what coverage existed under its policies for such claims.").

**CONCLUSION**

The reserve information is relevant under Rule 26(b)(1). Travelers has not met its burden of showing that discovery of that information should be denied.

Accordingly,

IT IS ORDERED granting Plaintiff's Motion to Compel (Doc. 39). Defendant shall produce unredacted copies of any document identified in Defendant's privilege log that was withheld because it contains "confidential reserve information" no later than May 23, 2014.

DATED this 5th day of May, 2014.

Paul G. Rosenblatt
United States District Judge